## THE WATER WITCH'S CARGO.

### (*District Court, D. Massachusetts.* November 23, 1886.)

SHIPS AND SHIPPING—DUTY OF MASTER NOT TO TAKE AVERAGE BOND AFTER ADJUSTMENT OF LOSS—FORM OF AVERAGE BOND.

    The question whether tender of an average bond, reciting that the owners claim that certain losses and expenses had been incurred which might constitute a general average, is sufficient to entitle consignees to a delivery of the goods from the master, cannot be decided (there being no contention but that the losses and expenses made a case of general average) after the adjustment has been made, there being no obligation on the master then to accept any bond.

In Admiralty.
*C. T. Russell, Jr.,* for libelants.
*Paul West,* for claimants.

NELSON, J. The brig Water Witch arrived in Boston on the thirteenth of December, 1885, from Baltimore, having on board a cargo of clay retorts, tiles, etc., consigned to the libelants, Waldo Bros., commission merchants, doing business at Boston. In the course of the voyage a general average loss occurred. On her arrival here the master offered to deliver possession of the cargo to the consignees, they paying the freight, upon their executing to him an average bond prepared by the adjuster employed by him to settle the loss, in which it was recited that in the due prosecution of the voyage certain losses and expenses had been incurred, and other expenses thereafter might be incurred, which, according to the usage of this port, constituted a general average to be apportioned on the vessel, her earnings as freight, and the cargo on board. The consignees declined to execute the bond, with the recital expressed in that form, upon the ground that by its terms they would be precluded from disputing the liability of the cargo for contribution; but, desiring to obtain possession of the cargo, they offered to give a bond in which the recital was that *the owners claimed* that certain losses and expenses had been incurred on the voyage, which *might* constitute a general average, etc., and they had prepared and tendered to the master a bond in that form, and demanded the cargo, offering to pay the freight. But the master refused to accept the bond, or to deliver the cargo, insisting on his adjuster's form of the instrument.

The principal question discussed was whether the master was bound to accept the bond tendered by the consignee, and upon the payment of the freight deliver the cargo; but, on the facts as they were developed at the hearing, this question does not fairly arise for the decision of the court. The brig arrived here on December 13th. The negotiations between the parties as to the form of the bond extended until December 28th, and on that day the consignees tendered their bond. But at that time the average adjustment had been completed,

and was known to the consignees. It is denied in the libel that a loss had occurred which subjected the cargo to contribution. But it turns out that no dispute ever really existed on this point. The brig, in the course of the voyage, encountered a severe gale, in which her sails were blown away, and other damage suffered, from which she was obliged to put into Vineyard Haven, where she incurred expense, and she was afterwards towed to Boston. That these expenses constituted a case of general average has never been a subject of contention between the parties. Therefore, on January 2d, when the libel was filed, all occasion for an instrument of this nature had ceased to exist, and nothing remained for the consignees to do but to pay the freight, and the amount apportioned on the cargo, (upon which payment the master was ready to deliver the cargo,) and take away their goods. There is no doubt that the master, as agent of the shipowner and all others concerned, has a possessory lien on cargo for all general average sacrifices and expenses. The obligation of an average bond is an engagment by the consignee, on the condition of his immediately receiving the goods, to pay his proportion of the general average as soon as it shall be ascertained by an adjuster in the usual way. There is no law or usage that requires the master to accept such an instrument, in place of the cargo, after the adjustment has been completed. There is no proof or pretense that the consignees suffered damage from the detention, even if it was improper. Therefore the question which this suit was brought to settle does not arise on the conceded facts, and I am obliged to dismiss the libel. The freight has been paid since this suit was begun.

The claimant is entitled to a decree against the stipulators for the libelants for the amount apportioned upon the cargo by the adjuster. As the suit seems to have been contested on both sides with a view to settle a point about which the opinions of accomplished adjusters differ, and in this respect it has failed in its object, no costs are to be allowed. Ordered accordingly.